Our next case is NVS Technologies v. Department of Homeland Security, 2020-2046. Mr. Sinkar. Good morning and may it please the Court. In this appeal, NVS Technologies challenges the termination for convenience of its research and development contract to develop a pathogen detection system for the Science and Technology Directorate of the Department of Homeland Security. That termination for convenience occurred because the acting director of its Chemical and Biological Defense Directorate, Donald Woodbury, refused to allocate more funds to the contract after four years of work, just six months before NVS was to deliver a prototype of the system. The funds were exhausted and the assistant director had the right not to allocate new funds? Your Honor, the allocated funds were exhausted. They were at $23 million in change, but there was still a ceiling of $30 million. So the contract itself provided that, and this is in the LOF clause, the parties contemplate that the government will allot additional funds incrementally to the contract up to the full estimated cost to the government specified. So the government had the right to exercise that power reasonably, but there was also the right, but not the obligation. Subparagraph, if additional funds are not allotted, the contracting officer will terminate the contract. And that is why it was terminated. But the government does not have absolute license on the judgment about whether to allot more funds, Your Honor. That's the whole point of the implied duty of good faith and fair dealing, that all contract powers have to be exercised consistent with that requirement. That's the whole point of it. So yes, the government wasn't obligated in some kind of absolute sense to allot more funds to a contract, but by the same token, it did not have a free license just to decide not to allot more funds. That was not the case. And indeed, you can see when I say that the government's discretion here was hemmed in, I like to think of the duty of good faith and fair dealings as kind of a guardrails for the All you have to do is look at the reasons Mr. Woodbury gave for his decisions, his decision. First of all, his number one reason, and that number one is his phrasing, was that, quote, DHS does not have a mission for clinical biodiagnostics. I'm sorry, there's a lot of multisyllabic words in this case. And so it should have been over at HHS. So after four years and the expenditure of $23 million, Mr. Woodbury said, oops, this is not within our mission. Now, frankly, that simply was untrue. And indeed, the statement of work at Appendix 93 made it clear that the Directorate of Science and Technology viewed this sort of a contract within its memo explaining why he wasn't allotting funds contradicted this notion. He said, quote, DHS S&T customers, and then he cites them, continue to have a need for highly multiplex biodefense pathogen detection capability in their laboratory operations. S&T plans to meet this need sooner at lower cost and lower risk than anticipated, than the anticipated path in the NVS technologies contract. So his number one reason outside of being baseless, here's one individual in an agency that says this isn't the agency's mission. It directly contradicts the whole purpose of this contract and the legitimate expectations of NVS. It is also contradicted by his own statements. But secondly, the other reason that he gave was that the cost of continuing the NVS contract was, according to him, not, quote, the best use of our funding, given the availability of more mature platforms in the commercial market. Now, none of this shows bad faith. The board found there was no bad faith. And you're just disagreeing, your opinion, because it's in counsel's and client's interest, of course, was different from that of the assistant director, who had a right not to allocate new funds. Well, a couple things, your honor. First of all, respectfully, he did not have an absolute right not to allocate funds. But to go back to your bad faith point, I think you have to be clear. And like in so many areas of the law, the titles and characterizations of legal rights sort of overlap and come from the same body of facts. There is a bad faith standard, which requires malice for challenging a termination for convenience. That's not what we're claiming here. The duty of good faith and fair dealing, that phrasing actually encompasses quite a bit more than that. And as this court said in the Metcalfe case in 2014, that the implied duty covers all aspects of performance and enforcement, and that it focuses on, quote, faithfulness to an agreed common purpose and consistency with justified expectations of the party, close quote. So respectfully, your honor, it is not accurate in terms of the duty that we're claiming DHS violated here to boil it down to bad faith. There is the separate bad faith concept that involves malice, and that's not what we're claiming here. And so it is also, so there's several aspects of this, which we submit, make it clear that the duty of good faith and fair dealing was violated here. First, Mr. Woodbury identified no change in the circumstances of the bargain that is a threshold requirement for the exercise of a termination for convenience. And as the court knows, the whole origin of the termination for convenience comes from the problem of the unique problem of government procurement, where there are risks external to what the government can do that can undermine the bargain. If the government has a contract with the Ford Motor Company to produce Sherman tanks for a war and the war ends, that is not a discretionary choice by the government. It's a risk that happened. And so the termination for convenience proposition says, okay, for those kinds of external risks, not controlled by either party, those are going to be shared by the parties. And so what this court has said quite sensibly in the Maxima case is that determination for convenience can be appropriately invoked, quote, only in the event of some kind of change from the circumstances of the bargain or in the expectations of the party, close quote. Secondly, it is well-recognized, the Krigoski case from this circuit points out that a contract may not be terminated for convenience simply to acquire a better bargain from another source. And that's precisely what Mr. Woodbury was saying he was doing. And apropos of this, his number one statement, I mean, he basically on his own said that the NDS contract was outside the scope of DHS's mission. And that is unfaithful to the agreed common purpose of the contract and is inconsistent with the justified expectations of NDS. And we rely for that, it's in our briefs, both the Metcalf case and Dobbins versus the United States, which is 2019 case. Four, Mr. Woodbury offered no evidence to support his claim that more mature platforms were commercially available. That claim is, in fact, untrue. The science and technology personnel monitored the commercial marketplace while this was going on, and there was nothing out there that satisfied the needs of the stakeholders in this. And remember, the stakeholders here, which were called the interagency program team, they were stakeholders from CDC, FDA, EPA, Secret Service, and so on. That's the end of my time. Thank you. I'll reserve the rest of my time for rebuttal. Yeah, you could continue a little bit, it's still your time, but if you want to stop, we'll save it. Yeah, I think I will, Your Honor. All right, thank you. Mr. Long. Thank you, Your Honor. It may have pleased the court. NDS's implied duty of good faith in a fair deal and claim simply isn't grounded in the party's contractual obligations. As stated in the Dobbins case, NDS needed to show that DHS interfered with NDS's performance or acted to destroy NDS's reasonable expectations regarding the fruits of the contract. The Limitation of Funds Clause plainly states that the government was not required to fund the contract beyond the allotted amount. It did that here. NDS was fully paid the allotted amount plus termination costs. And in that respect, the government complied with the Limitation of Funds Clause and therefore the contract. Then, when the government decided to terminate for convenience, as I said, it paid termination costs and it was within its discretion to do so. Mr. — my friend, Mr. Sincar, points to the Maxima case. But this court in Kurgoski distinguished Tornicello and Maxima on the grounds that those cases apply in situations where the government has entered a contract without the intent of fully performing. That's not the factual situation here. And so, with respect to the subsequent termination for convenience, presumably NDS in its opening brief states that it is not trying to prove that there was an abuse of discretion. Now, it backpedals a little on its reply, but that was its statement initially. It's not trying to show bad faith and it's not trying to show abuse of discretion. That's at page 34 of their brief. And there could be no abuse of discretion as to the termination for convenience because after the government, after DHS had decided to not allot additional funds to the contract, there's no reason for the contract to continue before it was completed. And so, there's no abuse of discretion there. Ultimately, as we point out in our brief, what it amounts to is NDS disagreeing with a decision that Mr. Woodbury was authorized to make for DHS within his rights as to whether or not to fund the contract. And for reasons that have been explained by the board and have been explained in our brief, he decided that it didn't warrant further funding. Now, we've shown that that decision was not made in bad faith and bad faith was NDS' focus at the board. But irrespective of that point, it ultimately goes back to the contractual point that DHS was entitled to simply decide to no longer fund the contract. And that's subject to an abuse of discretion standard. For this good faith, the implied duty of good faith and fair dealing claim, which is what NDS is making, the question again is only whether NDS and DHS interfered with performance or destroyed NDS' reasonable expectations. Again, given the plain language of limitation of funds clause, there's no reasonable basis for NDS' claim that expected that the contract would be allotted funds up to the contract ceiling or until there was a working prototype. DHS was free to decide to go in another direction. And for that reason, there can be no implied duty of good faith and fair dealing violation. Unless the court has any questions, we respectfully ask that you affirm the board's decision. Thank you, counsel. Judge, can I ask one question, please, Judge Klovenger? I understand the government's position to be that if there's no real expectations that are diminished and no interference with the performance of the contract, then it doesn't make any difference what reason the government asserts for termination for convenience. Even if the reasons asserted get claimed wrong. Well, Your Honor, so I think the termination for convenience is subject to an abuse of discretion standard or bad faith. And that, I think, we see in the secure force decision that we cite in our brief and obviously come up in other cases. You agree with the abuse of discretion standard that applies to the government being able to terminate for convenience? Correct, Your Honor. But the choice to discontinue funding here was a contractual right for DHS. And so it could not be an abuse of discretion given that DHS had exercised a lawful contract right. There could be no abuse of discretion in the decision to terminate for convenience given that there was no further funding allotted. Again, a rightful decision. And let's assume in the facts of this case, just as a hypothetical, that you had the same situation that run through the money, the $23 million, but there was still another $7 million or so that was within reasonable contemplation that might have been applied. And let's assume that Mr. Woodbury instead had stated, my only reason for terminating this contract for convenience is because this is a minority contractor, black-owned company, and I don't believe we should be contracting with black-owned companies. And he therefore terminated for convenience. That's the reason he's given. Is that an abuse of discretion? What's the legal result from that rationale? Well, Your Honor, I confess to not having contemplated that hypothetical in advance, and I think that reference to the contract might benefit because in the FAR, there are provisions generally dealing with discrimination claims. Those might apply here. They might not. I would need to come back to the court. What I'm trying to get at is whether or not we are supposed to measure the reasons given for the termination for convenience or for rationality under an abuse of discretion standard. Yes, Your Honor. So I think, yes, I understand that the point of your hypothetical and my point in raising sort of that larger point, I think ultimately goes to the question of how NDS has bad faith finding of the board. They're not claiming abuse of discretion. They say that standard is not applicable. They themselves have brought this into good faith and fair dealing. And the structure of this court's test under Dobbins and other cases is denying the fruit to the contractor, interfering with performance. That's what the duty of good faith and fair dealing test looks at. I don't know whether there would be other remedies if Mr. Woodbury had acted with a discriminatory animus or acted to, you know, benefit his, benefit a friend or something like that. But that's the good faith and fair dealing looked at what the contractor is receiving versus what the contractor expected. And in this case, it's the contractual language that establishes those expectations. There might be other sort of, I mean, certainly I think it could be possible to for a party to raise a bad faith claim. NDS did just that here. And as you know, as I've said, the board concluded that there was no bad faith and that's not challenged here. It's a good faith and fair dealing claim, which falls within a particular jurisprudence for this court. And again, it goes to expectations. I hope that answers your question, Robert. Counsel, thank you. Mr. Sincar, I have some rebuttal time. Thank you. Thank you. Let me start, first of all, just to go back to one point we discussed earlier, as with bad faith. Abusive discretion is also recognized by itself as part of one manifestation of a breach of good faith and fair dealing. And for example, the restatement, second of contracts, section 205, talks about using contractual power that can be abused and so violate the duty. So for example, and I'm quoting here, the abuse of a power to determine compliance or to terminate the contract. That's restatement, second contracts, section 205, E. Similarly, you can have a perfectly legitimate contract right, but if it's exercised in the context in a way that can be determined to be unfair, that violates the duty. So one example that the restatement gives is when you exercise such a power, when the other party is in a, as I put it, necessitous circumstances, so you're essentially extorting the behavior of a party. So I think we've got to be careful there. But here, remember that we were six months away from having a prototype. And all of the evidence supported the proposition that that prototype would be available and ready to go. And so the fruits of the contract were within everyone's grasp, including the government. And that's part of the tragedy of this. It's $23 million wasted. And it was reasonable. Well, in all fairness, the prototype may have been six months away in the anticipation of a contractor, but the prototype was late coming anyhow. The prototype was supposed to have been delivered much earlier. And maybe part of the frustration was it's not coming on time. Your Honor, I don't think that that is accurate. First of all, the contract timeframe, of course, was modified periodically by modifications. So it was originally, it was supposed to end by October of 2013, and it ultimately was extended to July 31 of 2014. But I think it's not just the expectation or the anticipation of the contractor concerning the availability of the prototype, but the scientific people from CBD went and saw the modules working and so forth, and they reported back that based on their judgment, the prototypes were within grasp. So the expectations of NDS that this contract would be completed and performed is there in the evidence. There's nothing conflicting that in the record. And in fact, there is no substantial evidence supporting Mr. Woodbury's characterizations of why he was doing this. And we have here the benefit of an OIG report, a completely independent report that examined every concern that Mr. Woodbury just blathered out, and I say it that way because he had no support for it. And all of those were found to be baseless. So, you know, this is, in many respects, what happened here is way over the boundaries of the discretion the government has. And remember, the LOF clause, I quoted it before, but it's not just the provision that says the government is not obligated to reimburse a contractor for excess costs, excess over the amount allotted, but there is that provision that the parties contemplate that the government will allot additional funds incrementally to the contract up to the full estimated cost. Now, the government can have reasonable reasons not to allot funds, but here they didn't have them. It was just really, I'm almost speechless because the record is so vacant to support what DHS did here. So, your honor, unless anyone has any further questions of me, I am done and I'll surrender the rest of my time. Thank you, counsel. We appreciate your argument and the case is taken under submission.